UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIP ROGERS,<br><br>    Petitioner,<br><br>    v.<br><br>R. GROUNDS,<br><br>    Respondent. | Case No. CV 16-901 JC<br><br>MEMORANDUM OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DISMISSING ACTION |

**I.   SUMMARY**

On February 9, 2016, petitioner, who is in state custody and is proceeding *pro se*, filed a Petition for Writ of Habeas Corpus by a Person in State Custody with an attached memorandum (collectively, "Petition"), challenging a criminal judgment in Los Angeles County Superior Court.[1] Petitioner raises two grounds for relief: (1) blood sample evidence which was forcibly seized from him and the fruits thereof should have been suppressed pursuant to the Fourth Amendment in light of the post-sentencing decision in Missouri v. McNeely, 133 S. Ct. 1552 (2013); and (2) his counsel was ineffective because he failed to present evidence

---

[1] The Court herein refers to the Petition page numbers provided in the Case Management/ Electronic Case Filing (CM/ECF) system.

that the pedestrian victim petitioner hit and killed had cocaine in her system at the time of the collision. (Petition at 5, 10-11, 19-26).

On April 8, 2016, respondent filed an Answer ("Answer") and lodged multiple documents ("Lodged Doc."), including the Clerk's Transcript ("CT"), and the Reporter's Transcript ("RT"). Petitioner did not file a Reply.

The parties have consented to proceed before the undersigned United States Magistrate Judge. For the reasons explained below, the Petition is denied and this action is dismissed with prejudice.

## II. PROCEDURAL HISTORY

On June 26, 2012, a Los Angeles County Superior Court jury found petitioner guilty of gross vehicular manslaughter while intoxicated (Count 1), vehicular manslaughter with ordinary negligence (Count 2), driving under the influence and causing bodily injury (Count 4), and driving while having 0.08% alcohol or more in his blood and causing bodily injury (Count 5). (CT 219-22; RT 842-47).[2] As to all of the foregoing counts, the jury also found true, among other special allegations, that petitioner had suffered both a prior conviction for driving under the influence of alcohol and a prior conviction for driving while having 0.08% alcohol or more in his blood. (CT 219-22; RT 842-46). Petitioner thereafter admitted that in 2003, he had suffered a prior felony conviction for being a felon in possession of a firearm. (RT 863-64).

On July 26, 2012, the trial court sentenced petitioner to a total of 16 years to life in state prison. (CT 240-43, 261-62; RT 871). More specifically, the court imposed a sentence of 15 years to life on Count 1 and a consecutive sentence of one year based upon the 2003 prior conviction. (CT 240-43, 261-62; RT 871). The court did not impose sentence on the remaining counts – Counts 2, 4 and 5 –

---

[2]The jury was unable to reach a verdict on the second degree murder charge (Count 3), and that charge was dismissed. (CT 225; RT 847-79, 852, 857-58).

2

because they constituted lesser included offenses of Count 1. (CT 242-43; RT 864-66, 871).

On April 4, 2014, the California Court of Appeal affirmed the judgment. (Lodged Doc. 7). On June 18, 2014, the California Supreme Court denied review. (Lodged Doc. 9).

Petitioner thereafter sought and was denied habeas relief in the Los Angeles County Superior Court, the California Court of Appeal, and the California Supreme Court. (Lodged Docs. 10-12, 14-17).

### III. FACTS[3]

Between about 7:00 p.m. and 8:00 p.m. on July 17, 2010, petitioner drank between four and 15 eight-ounce glasses of beer. (RT 393-94, 578, 583-84). By approximately 8:20 p.m., petitioner had a blood alcohol level of between 0.26% and 0.32%.[4] (RT 579, 589, 610). At about that time, petitioner was driving south on San Pedro Street when he hit and killed pedestrian Mary Webster, who was crossing San Pedro between 79th and 80th Streets. (RT 373-74, 459, 496-98, 630). A security camera at a market recorded the collision. (RT 439, 492-93, 496). The recording was played for the jury. (RT 492-93).

///

---

[3] The Court has independently reviewed the entire state court record. See Nasby v. McDaniel, 853 F.3d 1049 (9th Cir. 2017) (essentially holding that federal habeas court required to review independently state court record where relief sought on basis of record before state court).

[4] A blood sample was taken from petitioner at about approximately 1:25 a.m. on July 18, 2010. (RT 478, 553, 555, 583). Such sample had a blood alcohol level of 0.22%. (RT 572, 576-79, 583). Although petitioner admitted to a police officer at the scene that he had drunk four eight-ounce glasses of beer beginning at 7:00 p.m., the criminalist who analyzed petitioner's blood sample estimated that petitioner would have had to drink about 14 or 15 eight-ounce glasses of beer to have a blood alcohol level of 0.22% five hours later. (RT 583-84). The criminalist estimated that at the time of the collision, five hours before the blood sample was taken, petitioner's blood alcohol would have been between 0.26% and 0.32%. (RT 579, 589, 610).

3

Los Angeles Police Officers Errin Burns and Kiel Kearney responded to the scene. (RT 373-74, 484). Burns saw Webster lying in the street and petitioner kneeling next to her. (RT 388, 390). Petitioner was very emotional. (RT 435-36, 447). Burns observed objective signs of petitioner's intoxication – he emitted a strong odor of alcohol, he was very sweaty, his face was flushed, his eyes were watery and bloodshot, his gait was unsteady and his speech was slow and slurred. (RT 430-32). Petitioner stated that he had drunk four beers starting at about 7:00 p.m. and that his license was currently suspended as the result of a prior driving under the influence conviction. (RT 392-96, 432-33). While Burns was speaking to petitioner, a patrol car equipped with a camera arrived at the scene and Burns's interview of petitioner, which was already in progress, was recorded. (RT 397-99). A recording of the interview was played for the jury. (RT 399-403). The same patrol car camera recorded Officer Trovato arriving at the scene and administering field sobriety tests to petitioner. (RT 403-04, 428-29). Such recording was also played for the jury. (RT 403-04, 428-29).

Trovato's partner that night, Officer Lashawn Robins, testified that after Trovato performed the field sobriety tests, she and Trovato transported petitioner to the 77th Street Police Station where Robins tried to administer a chemical breath test. (RT 534-41). Petitioner was unable to breathe into the tube long enough to get a sufficient sample. (RT 541-44). Petitioner ultimately declined to agree to submit to a blood test, but did not physically resist when his blood was being taken. (RT 474-76, 478-79, 544-48, 550). Nurse James McKeever drew petitioner's blood at about 1:25 a.m. on July 18, 2010. (RT 553, 555). Criminalist Chrissy Su analyzed petitioner's blood sample and determined that it had a blood alcohol level of 0.22%. (RT 572, 576-79, 583). Su estimated that at the time of the collision, petitioner's blood alcohol would have been between 0.26% and 0.32%. (RT 579, 589, 610); see supra note 4.

///

At a later time, approximately eight months before trial, petitioner approached and spoke to the victim's brother, Bernard Webster, following a court proceeding. (RT 330, 332-33). Petitioner told the victim's brother that he was sorry for what had happened to the victim, that he just hadn't seen her, that she wasn't in the wrong, and that petitioner had been drinking all day. (RT 333-34).

## IV. STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court may not grant an application for writ of habeas corpus on behalf of a person in state custody with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).[5]

In applying the foregoing standards, federal courts look to the last reasoned state court decision and evaluate it based upon an independent review of the record. See Nasby v. McDaniel, 853 F.3d 1049 (9th Cir. 2017); Smith v. Hedgpeth, 706 F.3d 1099, 1102 (9th Cir.), cert. denied, 133 S. Ct. 1831 (2013). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are

---

[5]When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. Harrington v. Richter, 562 U.S. 86, 99 (2011); see also Johnson v. Williams, 133 S. Ct. 1088, 1094-96 (2013) (extending Richter presumption to situations in which state court opinion addresses some, but not all of defendant's claims).

5

presumed to rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Cannedy v. Adams, 706 F.3d 1148, 1158 (9th Cir. 2013) (it remains Ninth Circuit practice to "look through" summary denials of discretionary review to the last reasoned state-court decision), as amended on denial of rehearing, 733 F.3d 794 (9th Cir. 2013), cert. denied, 134 S. Ct. 1001 (2014); but see Kernan v. Hinojosa, 136 S. Ct. 1603, 1606 (2016) (Ylst presumption is rebuttable; strong evidence can refute it).

## V.    DISCUSSION

### A.    Petitioner Is Not Entitled to Federal Habeas Relief on His McNeely Claim (Ground One)

In Missouri v. McNeely, 133 S. Ct. 1552 (2013) ("McNeely") – which was decided after petitioner was sentenced and while his direct appeal was pending – the Supreme Court held that the natural metabolization of alcohol in the bloodstream does not present a *per se* exigency that justifies an exception to the Fourth Amendment's search warrant requirement for nonconsensual blood testing in drunk driving cases; exigency must be determined case by case based on the totality of the circumstances. See McNeely, 133 S. Ct. at 1556, 1563 (observing that "while the natural dissipation of alcohol in the blood may support a finding of exigency in a specified case, . . . it does not do so categorically"). Petitioner contends in Ground One that McNeely, "dictates habeas relief" because petitioner was forced to provide a blood sample against his will in violation of the Fourth Amendment. (Petition, Ground One; Petition at 5, 10-11, 19-24). He essentially contends that the admission of Criminalist Su's analysis – which is summarized above and was not the subject of a motion to suppress or pertinent objection[6] –

---

[6]Although petitioner's counsel asserted a chain of custody objection to the admission of the blood/blood analysis at the conclusion of the prosecution's case in chief (RT 663-64), the record does not reflect that the seizure of blood from petitioner was the subject of a motion to
(continued...)

6

violated the Fourth Amendment and should have been suppressed because it was a product of the unlawful forced seizure of his blood.

The Los Angeles County Superior Court – the last state court to issue a reasoned decision addressing this claim – rejected it on the merits on habeas review, finding that the instant case fell within the good faith exception to the exclusionary rule. (Lodged Doc. 11 (citing People v. Harris, 234 Cal. App. 4th 671 (2015)). As petitioner's claim is not cognizable on federal habeas review, and as the decision of the Los Angeles County Superior Court was not contrary to, or an objectively unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts in light of the evidence presented, petitioner is not entitled to federal habeas relief on Ground One.

### 1. Petitioner's Fourth Amendment Claim Is Not Cognizable on Federal Habeas Review

Ground One is not cognizable in these federal habeas proceedings. Where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. See Stone v. Powell, 428 U.S. 465, 494 (1976); Newman v. Wengler, 790 F.3d 876, 878 (9th Cir. 2015) (Stone survived the passaged of the Antiterrorism Effective Death Penalty Act and bars a Fourth Amendment claim on federal habeas review where a petitioner had a full and fair opportunity in state court to litigate such claim); Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996) (Stone renders Fourth Amendment claim not cognizable in federal habeas proceedings if a petitioner has had a full and fair opportunity to litigate the claim

---

[6](...continued)
suppress or objection. See Segurola v. United States, 275 U.S. 106, 110-11 (1927) (failure to object constitutes a waiver of Fourth Amendment right against unlawful search and seizure).

in state court). "The relevant inquiry is whether the petitioner had the opportunity to litigate his claim, not whether he did in fact do so or whether the claim was correctly decided." Ortiz-Sandoval v. Gomez, 81 F.3d at 899 (citations omitted).

Although petitioner's counsel did not move to suppress the blood alcohol evidence or otherwise object to the introduction of such evidence based upon the forced seizure of blood from petitioner, he nonetheless had a full and fair opportunity to litigate petitioner's Fourth Amendment claim under California Penal Code section 1538.5. See Cal. Penal Code § 1538.5 (authorizing criminal defendants to seek the suppression of evidence obtained as a result of an unreasonable search or seizure); Gordon v. Duran, 895 F.2d 610, 613-14 (9th Cir. 1990) (discussing same as foreclosing relief under Stone). Because petitioner could have litigated his Fourth Amendment challenge at trial, his Fourth Amendment claim is not cognizable in these proceedings and must be rejected. See, e.g., Oenning v. Harris, 2015 WL 237899, at *2 (N.D. Cal. Jan. 16, 2015) (rejecting challenge that petitioner was not afforded a full and fair opportunity to litigate his Fourth Amendment claim because McNeely was decided after the trial court ruled on his suppression motion; claim was not cognizable under Stone), cert. of appealability denied, No. 15-15171 (9th Cir. Aug. 31, 2015).

### 2. In Any Event, a Motion to Suppress the Evidence from the Forced Blood Draw Would Have Been Denied and the Superior Court's Rejection of Ground One Was Reasonable

The Court observes that counsel had good reason not to move to suppress the evidence in issue as any such motion would have been denied based on then existing law. At the time a forced blood sample was seized from petitioner, Schmerber v. California, 384 U.S. 757 (1966), was controlling authority. Schmerber permitted warrantless blood draws in driving under the influence (DUI) investigations performed in a medically approved manner. See Schmerber v.

California, 384 U.S. at 770-72. "Post-Schmerber and pre-McNeely, a period spanning nearly 50 years, California cases uniformly interpreted Schmerber to mean that no exigency beyond the natural evanescence of intoxicants in the bloodstream, present in every DUI case, was needed to establish an exception to the warrant requirement." People v. Jiminez, 242 Cal. App. 4th 1337, 1362-63 (2016) (citations and internal quotation marks omitted).

"[S]earches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the [Fourth Amendment's] exclusionary rule." Davis v. United States, 564 U.S. 229, 232 (2011). When police conduct a search in compliance with binding precedent that is later overruled, the exclusionary rule does not bar the admission of evidence thereby obtained. Id. at 232; see also id. at 241 ("[W]hen binding appellate precedent specifically *authorizes* a particular police practice, well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities. An officer who conducts a search in reliance on binding appellate precedent does no more than act as a reasonable officer would and should act under the circumstances.") (emphasis original; citations and internal quotation marks omitted).

In petitioner's case, the blood draw was performed after petitioner had run over Ms. Webster, admitted that he had been drinking, and exhibited signs of inebriation. At the preliminary hearing, both Officers Burns and Trovato testified about petitioner's apparent inebriation at the collision site. Officer Burns observed that petitioner "had a strong odor of alcoholic beverage emitting from his breath," he was "very sweaty," his eyes were bloodshot, and his gait was "somewhat unsteady." (CT 13; see also RT 388, 391, 394, 430-32, 444, 451 (Burns's consistent trial testimony, stating that petitioner told her he had been drinking beer, *i.e.*, four eight-ounce glasses)). Officer Trovato (who did not testify at trial) also observed that petitioner's breath smelled of alcohol, he had slurred

9

speech, his eyes were bloodshot and watery, he was disheveled, and he had poor coordination. (CT 37-42). Field sobriety testing of petitioner's eyes, balance, and walking yielded results consistent with alcohol use that in Officer Trovato's opinion rendered petitioner unable safely to operate a vehicle. (CT 40-46, 51-54). Petitioner reportedly said to Trovato, "It's no secret I've been drinking. I just came from a funeral." (CT 40).

Sergeant Hayes testified a trial that the police may do a forced blood draw for chemical testing in a DUI investigation if the subject refuses to give a sample. (RT 470-71). Sergeant Hayes had explained to petitioner that he had an obligation under California law to submit to a chemical test from a standard admonition. (RT 471-74). Petitioner refused to give a sample. (RT 474-76). A forced blood sample then was taken from petitioner. (RT 476-81; 546-50, 553-56).

Given these facts, reasonable police officers would have believed that they were authorized to draw petitioner's blood under Schmerber. Any motion to suppress the blood alcohol evidence properly would have been denied. See People v. Jiminez, 242 Cal. App. 4th at 1365 (finding same where evidence was that defendant ran over pedestrians and informed a nurse with a police officer present that the defendant was "withdrawing from methamphetamine"). Indeed, on habeas review the Superior Court rejected petitioner's claim because the precedent at the time of petitioner's investigation was that probable cause of DUI and the natural dissipation of alcohol or drugs in the bloodstream justified a warrantless blood test, the police officers acted in good faith reliance on such precedent, and the exclusion of the evidence in issue would not have achieved the exclusionary rule's purpose of deterring Fourth Amendment violations. (Lodged Doc. 11 (citing People v. Harris, 234 Cal. App. 4th 671, 676 (2015)). In light of the foregoing, the Superior Court's rejection of petitioner's instant claim was not contrary to, or an unreasonable application of clearly established Federal law and was not based on

///

an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

### B. Petitioner Is Not Entitled to Federal Habeas Relief on His Ineffective Assistance of Counsel Claim (Ground Two)

In Ground Two, petitioner contends that his trial counsel rendered ineffective assistance by failing to introduce evidence that the victim had cocaine in her system at the time of the accident to mitigate petitioner's culpability. (Petition, Ground Two; Petition at 5, 11, 19, 25-26). The Los Angeles County Superior Court – the last state court to issue a reasoned decision addressing this claim – rejected it on the merits on habeas review, reasoning that whether the victim had cocaine in her system was "totally irrelevant" and "likely would not have been admissible." (Lodged Doc. 11). Petitioner is not entitled to federal habeas relief on this claim.

#### 1. Additional Pertinent Facts

At the preliminary hearing, petitioner's counsel asked the doctor who performed the autopsy on Ms. Webster whether he did a toxicology test and what the findings were. (CT 5-7). Over the prosecution's objection, the doctor said that a toxicology test showed that Ms. Webster had cocaine in her system at a level of 0.28 micrograms per milliliter. (CT 7-8). The court asked counsel the legal relevance to Ms. Webster's intoxication, and counsel stated that if the victim is the cause of an accident – as would be argued in this case – Ms. Webster's intoxication would be relevant to whether petitioner was grossly negligent in his driving. (CT 8-9).

During trial outside the presence of the jury, the trial court noted that it had read a vehicular manslaughter case where the victim was not wearing a seatbelt, People v . Wattier, 51 Cal. App. 4th 948, 953 (1996) ("Facts attacking legal causation are only relevant if the defendant's act was *not* a substantial factor in producing the harm or injurious situation. The defendant is liable for a crime

11

*irrespective* of other concurrent causes contributing to the harm, and particularly when the contributing factor was a preexisting condition of the victim.") (emphasis original; internal citations omitted). To the court, it seemed that, unlike in Wattier, "the actions of the victim who died in this case [were] very much a part of the accident." (RT 421-25). The trial record reflects no further discussion or evidence regarding the victim's actions beyond how she crossed the street and likewise reflects no discussion or evidence of her toxicology results.

The doctor who performed the autopsy on Ms. Webster testified at trial about the victim's injuries but was not questioned about any toxicology results for Ms. Webster. (RT 622-30).

### 2. Pertinent Law

The Sixth Amendment guarantees the effective assistance of counsel at trial. See Strickland v. Washington, 466 U.S. 668, 686 (1984). To warrant habeas relief on an ineffective assistance of counsel claim, a petitioner must demonstrate both that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. Id. at 668, 687-93, 697. As both prongs of the Strickland test must be satisfied to establish a constitutional violation, failure to satisfy either prong requires that an ineffective assistance claim be denied. Id. at 697.

Counsel's representation is "deficient" if it "fell below an objective standard of reasonableness." Id. at 688; Harrington v. Richter, 562 U.S. at 104, 111. Courts must apply a "strong presumption" that an attorney's performance was within "the wide range of reasonable professional assistance." Richter, 562 U.S. at 104 (citation omitted). A petitioner can overcome the presumption only by showing that, when viewed from counsel's perspective at the time, the challenged errors were so egregious that counsel's representation "amounted to incompetence under 'prevailing professional norms.'" Id. at 105 (citation omitted).

Deficient performance is prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is one

that is "sufficient to undermine confidence in the outcome" of the trial. Id. The likelihood that a verdict would have been different "must be substantial, not just conceivable." Richter, 562 U.S. at 112 (citation omitted).

Where there has been a state court decision rejecting a Strickland claim, review is "doubly" deferential. Richter, 562 U.S. at 105 (citing Knowles v. Mirzayance, 556 U.S. 111, 123-24 (2009)). "The pivotal question is whether the state court's application of the Strickland standard was unreasonable." Richter, 562 U.S. at 101; see also 28 U.S.C. § 2254(d). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Richter, 562 U.S. at 102 (citing Lockyer v. Andrade, 538 U.S. 63, 71 (2003)). Relief is available only if "there is no possibility fairminded jurists could disagree" that the state court's application of Strickland was incorrect. Richter, 562 U.S. at 102. Moreover, since "[t]he Strickland standard is a general one, [ ] the range of reasonable applications is substantial." Id. at 105 (citing Knowles, 556 U.S. at 123).

### 3. Analysis

Petitioner fails to overcome the strong presumption that his trial counsel's election to forego eliciting evidence of the cocaine in Ms. Webster's system was sound trial strategy under the circumstances. Strickland, 466 U.S. at 689.

Petitioner's defense was that, notwithstanding his drinking, he had been driving safely at the time of the collision and that Ms. Webster simply stepped out in front of petitioner's car without sufficient time for petitioner to avoid hitting her. Petitioner's counsel admitted in his opening statement that petitioner had been drinking before he drove that evening and did have prior convictions, but indicated that the evidence would establish that petitioner was not grossly negligent when he drove, and instead that he was driving safely. (RT 326-28). Petitioner's counsel pointed out that the evidence would show that petitioner was driving in his own lane of traffic at approximately 40 miles per hour in a 35 mile

per hour speed zone, when Ms. Webster jaywalked "at a staggered angle" in front of petitioner's car. (RT 327-29). Petitioner slammed on his brakes and tried to go around Ms. Webster, but she was going back and forth between lanes and moved right into petitioner's lane as he tried to swerve around her. (RT 327; see also RT 791-96, 803-13 (counsel arguing similarly in closing)).

Petitioner's counsel elicited evidence to support the defense explained in his opening statement. A responding police officer testified from the video footage of the collision that Ms. Webster was walking outside of an "unmarked crosswalk" (*i.e.*, a permissible place to cross the street at an intersection that was not painted as a crosswalk), just prior to being hit. (RT 494-97, 532). By state law, she should have yielded to traffic because she was not in a crosswalk. (RT 498, 508). The officer further testified, however, that even if a pedestrian is outside a crosswalk, drivers have a duty to use all due care to yield the right of way when approaching a pedestrian. (RT 498-99, 508-09, 516, 529-30, 532). Petitioner swerved from the number two lane to the number one lane right at the point of impact – suggesting that petitioner was trying to avoid hitting Ms. Webster. (RT 530, 681-82). The speed limit was 35 miles per hour but the officer opined based on his experience, the footage, and the evidence from the collision that petitioner had been driving faster than 35 miles per hour. (RT 500-02, 509-12, 517). An expert for the defense opined that petitioner had been driving between 35 and 45 miles per hour. (RT 682-90, 694).

Petitioner's counsel – in support of a California Penal Code section 1118.1 motion for judgment of acquittal – argued to the court outside the presence of the jury, that there was insufficient evidence to establish that petitioner drove with gross negligence to support the murder charge (which was ultimately dismissed after the jury was unable to reach a verdict thereon) or the gross vehicular manslaughter charge. (RT 635-37). The trial court disagreed, noting it had "little trouble" denying petitioner's motion in light of the evidence. (RT 637).

Counsel cannot be faulted for failing to try to admit toxicology results for Ms. Webster at trial. Counsel purposefully may have refrained from introducing the cocaine evidence because counsel was arguing in petitioner's defense that petitioner's consumption of alcohol – a fact counsel could not dispute – did not impair how petitioner was driving at the moment of the collision sufficient for the jury to find he was grossly negligent. If counsel had argued that Ms. Webster was impaired when she stepped into the street, the prosecution undoubtedly would have countered that petitioner also was impaired such that his intoxication was a "substantial factor" for criminal liability. People v. Wattier, 51 Cal. App. 4th at 953. Strategic decisions, such as the choice of a defense or which evidence to present, "are virtually unchallengeable" if "made after thorough investigation of law and facts relevant to plausible options." Strickland, 466 U.S. at 690. There is no suggestion in petitioner's case that his counsel did not thoroughly investigate the applicable law and facts.

Assuming, *arguendo*, the toxicology evidence would have been admissible at trial had counsel sought to introduce it, petitioner has not shown a reasonable probability that the outcome of trial would have been different if the jury had known that Ms. Webster had cocaine in her system. Strickland, 466 U.S. at 694. As summarized herein, the jury was presented with evidence that Ms. Webster jaywalked in front of petitioner's car. The fact that there was cocaine in her system would not have changed the substantial other evidence of petitioner's own culpability, *i.e.*, that petitioner, having suffered two prior DUI convictions (RT 728-33), chose to drink to excess and, even though his driver's license had been revoked, then chose to get behind the wheel of his truck and drive that evening (RT 388, 391, 394, 430-32, 444, 451).

In short, the Los Angeles County Superior Court's rejection of Ground Two was not unreasonable and petitioner is not entitled to federal habeas relief on such claim.

**VI. ORDER**

IT IS THEREFORE ORDERED: (1) the Petition is denied and this action is dismissed with prejudice; and (2) Judgment shall be entered accordingly.

DATED: May 11, 2017

                                                /s/
                                  Honorable Jacqueline Chooljian
                                  UNITED STATES MAGISTRATE JUDGE